District and Dr. John Wiley, Mr. Olds. Hi. Good morning, Your Honor. How are you doing? Good morning. I think that we all know that about Friday Have you reserved time for... Oh, yeah. Sorry. Three minutes. Okay. Granted. We're here to discuss Fry. Before we get to that, would you agree that we need not deal with any question as to whether or not there's appellate jurisdiction here? I don't believe that there's any question. Because if there is any question that either of my colleagues have, that may be where we begin. I don't think that there is a question. I think that this Court does have jurisdiction. Thank you. Fry has changed the landscape, I think, in this question of whether and to what extent children who have disabilities have to exhaust under the IDEA before bringing a lawsuit on a different statute or the Constitution. At Fry, I think that there are three types of cases. One might be where there is a... it's clear that the only question is a faith. The second kind of case is, well, there's questions about a faith and there's questions about discrimination and they're interrelated or intertwined. And then third type would be that the lawsuit under the Rehabilitation Act or the Constitution or the Americans with Disability Act has really nothing to do with the faith or an IDEA claim. And Fry tells us to look to the grabberment of the complaint, right? Right. And the grabberment of the complaint filed on behalf of your client appears to be associated with the kinds of accommodations or lack of accommodations extended by the school district. Is that true? I would agree that count one of the complaint has those issues in it. I believe that count two does not. Even in count two and the remaining counts, isn't the assertion surrounding... aren't they all stemming from the same events and the assertion that your client was ostracized, not treated well, put in unfortunate circumstances that exposed him to risk because there was a failure to accommodate his needs, his particular educational needs from his earlier concussion. Is that right? I don't agree that count two is like that. I think count two involved the issue of... first of all, it had nothing to do with education, academics. It has to do with he wanted to stand on the sidelines of the football game after he had suffered his first concussion. This isn't a personal injury case, so I don't understand why that's material. I'm saying that under the Rehabilitation Act, there's a claim for the personal injuries that he suffered as a result of that being on the sidelines and being run over. I'm saying that under the Rehabilitation Act, my client can bring a claim seeking compensatory damages for those injuries. How is it a Rehabilitation Act claim? Well, he was disabled, the complaint alleges. His mother asked for accommodations, let him stand on the sidelines with the team because he suffered several weeks because of the concussion. The coach said, well, without the knowledge of the mother, the coach said, well, we're going to let him stand on the sidelines, but I'm going to put him in imminent risk of danger. Now, please address this outside the school context. Use the Fry kind of questions. Your opponent has said, you know, if you do what Fry says and you substitute library, for example, you can't make a claim like that under the Rehabilitation Act. Following up on that, use the two so-called clues that Justice Kagan referred to. I think the first clue could this be in a non-educational setting, and certainly it could be that if an employer knows let's just take it in the employment situation, you're dealing with an adult, you're dealing with a work multi. If an employer knows that an adult suffers a disability, puts the adult in a situation where the adult faces inherent risks, the adult gets injured, then I think the adult would have a claim under the Rehabilitation Act. I understand the Rehabilitation Act wouldn't apply to a full-back team because there's no federal funds, but theoretically the ADA would apply, and I think that the ADA would apply, and so I think that under that first clue, I guess that's the second, no, that's the first clue. Under that first clue, I think that it's clearly not educationally related. Under the second clue, you know, and this sort of gets into count one, under the first clue, we not only started in due process proceeding under the IDEA, but we exhausted our due process rights under the IDEA. Before we start talking about exhaustion, in FRA they tell us to look at the gloverman of the complaint. You have asked us to look at individual counts of the complaint. How do we square the directive to look at the gloverman of the complaint, the essence of the complaint? What's the complaint really about with what you're asking us to do, which is basically say, count two is like an ADA claim. I can figure out scenarios where a similar event could happen outside the school district to an adult, but are we permitted to do that under FRA? Well, sure, because I think that the two claims, they're joined in one lawsuit, but in a sense they're independent of each other. I mean, I suppose we could have filed two different complaints, and one complaint just talked about suffering the concussion, and then the other complaint talked about the discrimination, but I think you're supposed to bring all your claims together, and they really are those two claims are not related at all in the sense that the one stems from what happened at the football game had nothing to do with what goes on in the school. Nothing to do? I thought it was all part and parcel of he had been discriminated against, they weren't looking out for him the way they should have. This is, as you said at the outset, he wanted to get back and associate with the football team and was asking for help to do that. This all stems from was he being discriminated against in the context of his request for accommodations in the school setting? See, I don't think the events of Count 1 occurred and I wrote the complaint, so I should know. The events of Count 1 all occurred after the concussion. So, in other words, we haven't alleged that there was any discrimination that led up to the incident at the football game. What we have alleged is that, and maybe it would have been better to put Count 2 as Count 1, just from a chronological point of view, because Count 2, the concussion happened first, and then after the second concussion is when he experienced the discrimination which is the subject of Count 1. So, the two But the allegations read this is Count 2, as a consequence of deliberate indifference of the school district to Wellman's need for accommodations, Wellman was exposed to an extremely dangerous situation, etc. Correct, but I think my point in even reading that out loud is, as Judge Jordan was indicating, is the way the complaint is pled, it seems to interconnect the school's behavior with what occurred. I think that what Justice Kagan did, and in fact the entire unanimous Supreme Court said, is that there is certain conduct that can happen in a school situation that involves a disabled child that has nothing to do with the IDEA. And that's, I think that it's clear from our perspective, that at least as to Count 2, those claims have nothing to do with a free and appropriate public education. Did you settle that claim? Was that all part of the settlement that you entered into on behalf of your client? I don't believe it's Let me answer the question, then I'll explain. I don't believe that that claim was settled, because I believe that the relief was limited to the claim that you could actually raise under the IDEA. Not very limiting language in the release, is it? All rights claims causes of action and damages of any nature, including but not limited to any claim for legal fees or no cost, which were pursued in the above reference case, or which could have been pursued in the above reference case. That's pretty broad language, isn't it? I think that the, okay, right. The controlling language in the release and let me point out, I know you guys can do decide this case on whatever grounds that you want, but you know, release is much more power than we really are. I'm sorry, I'll take that back. The release is an affirmative defense which wasn't adjudicated below. When you say it wasn't adjudicated below, it was referenced in that June order, which was vacated by the September order, right? Right. He denied it in June. With the idea that it could be raised on summary judgment, right? Right. Because at least there was the view that this could be a universal release and you would have no claim at all, correct? Right. Okay, I'm sorry to interrupt you. Right. I'm sorry. The way that we read the release is that it released the claims that could be raised in the due process case under section 1415 of the education code. In other words, the matter, the only thing that you can raise in under 1415 as Justice Kagan noted, are matters related to a free and appropriate effect. That's true, but if you, in the course of having a dispute, and you've already said that in your view, your dispute went beyond the IDEA, if you choose in a dispute between two parties to use language which seems to be universal in its scope, any and all claims that could have been, were, might have been, etc., raised, why should you be heard to say, well, I didn't really mean that. I just meant IDEA claims. You could have drawn a release to IDEA claims, but you didn't draw a release to IDEA claims. You drew a release in this broad universal language. No, I think what the release says is we released the... It says what it says. We read it, and I read some of the language. It says it could be pursued in this case, which is only fake claims. It's either were pursued in this case, which are fake claims, or could be pursued. We'll have you back on rebuttal. Okay. Thank you. Thank you. Good morning. Good morning. Good afternoon, your honors. Tom Greth for the Butler Area School District, as well as Principal John Wiley. With respect to the allegation that Count 2 doesn't relate to the student education, both the Americans with Disabilities Act, Section 504, require school districts, as part of a student's educational program, to make accommodations in extracurricular activities. They are not separate or apart from the student's educational program. That logic can't hold, can it, in light of Fry? Fry seems to indicate that you can have an ADA claim, even if you're a disabled student. Your argument proves too much. It would imply that no student could ever have an ADA claim, because there's some relationship between the ADA and the IDA. No, I think it's absolutely fact specific, and I think Fry indicates through the test, but also, I think Fry, in the footnotes, the court acknowledges that there are circumstances under which an individual may make a claim. Sure. In certain circumstances. So why don't you hit Mr. Olds' argument and tell us why, in this case, count two really is a claim about faith, excepting for the purpose of discussion right now, that you would look for the gravamen of each individual claim, not the complaint as a whole. Excepting that for purposes of argument, why is he wrong about count two? Well, I think if you read the totality of the complaint, and each of the counts incorporates the factual assertions that are previously made, so if you start with the beginning and the factual allegations, fundamental or the gravamen of the complaint is all related to the school district's obligation to provide the student educational services, a faith, if you would. And Judge Schwartz referenced, I believe, paragraph 74. Yeah, can I get an answer to the question I asked, so I said assume for the sake of argument that we accepted his assertion that the gravamen of the complaint is not the operative question, it's the gravamen of each individual claim, that that's what the Supreme Court really meant. Talk about count two, because he says count two doesn't have anything to do with faith. Is he right or is he wrong, and if he's wrong, why is he wrong? He's wrong with respect to that. If you reference count two, and this was, I believe, paragraph 74 that was referenced by Judge Schwartz, Walman continues to suffer permanent and long-term injuries. These injuries are due to the sorry, I don't have my glasses, due to the indifference by the school district to Walman's need for accommodations. So he's tying the school district's obligation, which is an IDEA obligation, which is a section 504 obligation, to make accommodations across educational activities, including extracurricular activities, which would be the football program. Well, you were superimposing IDEA accommodations. Why isn't it accommodations under the ADA or the Rehab Act? It potentially could be imposed as well. And so using those views and assuming, as Judge Jordan said, we're reviewing the gravamen and the essence of count two, isn't the essence of count two he was placed in a position of physical danger by, after having the other concussion, by being required to hold the chains of the game? And isn't that accommodation be viewed not as an educational accommodation, but an ADA-type accommodation or Rehab Act accommodation, namely not putting someone in that circumstance of danger, but still allowing them to participate? Well, the question of danger is separate from the question of accommodations. And I think Chief Justice Smith hit it. This isn't a personal injury claim. This isn't a claim that the school district put a student in a situation where the student was physically injured, i.e., on the sidelines, an event occurred, he hits his head. I'm just coming off the allegations. He was placed in a highly dangerous situation. Correct. But the dangerous situation as pled relates to the failure to accommodate. And that's where it's tied to the underlying educational obligations of the school district. That's where we're having trouble, or at least I'm having trouble. If we're looking at count two in isolation, what is it in count two that has to do with educational accommodation? Mr. Old says, I pleaded and intended to plead it as meaning accommodations of the sort available under the Rehabilitation Act and the ADA. What is it in count two that makes you say, no, no, this is about faith? A, all of the preceding factual allegations that are incorporated. B, the fact that you can't separate participation in an intercollegiate high school athletic program from the student's participation in their educational program. And three, Fry tells us, Justice Kagan tells us, you look at the totality of the complaint, not specifically one count to say we're carving this out. And that's consistent with Batchelor, this court's determination, where there were four counts, two of which, count three and count four in Batchelor, the argument was made, no, no, no, no, this isn't a faith argument, this is a retaliation argument. And the court cited two of the circuits in that decision and said, it's intertwined, it's faith. That's what you have here. Are you saying that there's no set of circumstances under which a person could join a complaint that makes an IDEA claim, but is not, in effect, part of the IDEA claim? Imagine a student says there are crossing guards outside the school and their crossing guard that they hired was not trained and was not competent and actually directed my car into oncoming traffic and I was hurt. Would the school district's position be, that's faith, because school crossing guards are really and whether they're negligent or not in putting people into traffic, that's really about education. Or would the school district acknowledge no, that's about simple, straight up negligence and we've got to deal with that. Based on limited facts, Judge Gordy, you've provided, I think the district would say that's unrelated to faith. Okay, so it's not the mere fact that it's in the same complaint. If you accept the argument he's making, which is you could look claim by claim, it's certainly possible that you could have a claim in a complaint like his which was not about faith and even if you had to dismiss some of those claims, you wouldn't have to dismiss them all. Did I understand you correctly? I must have followed the question quite honestly. I think, if I understood what Judge Jordan was driving at is if the F.R.I.E. test that says look at the gravamen of the complaint allows a court to look both at the counts of the complaint individually and be able to allow those that don't in any way implicate issues of faith, allow them to still survive. I don't think there's any jurisprudence that stands for that principle. I don't think F.R.I.E. stands for that principle. I don't think the statute stands for that principle. But Judge Jordan's hypothetical, you agreed could be a cause of action that could potentially survive and not be barred by the I.D.E.A. So why should it be able to survive standing alone but be dismissed if it happens to be a count where there's other I.D.E.A. claims within the pleading? How does that make sense? Maybe I can pose for a hypothetical that might be that I'm following maybe in my mind as a school solicitor. You may have an allegation regarding a special education student that's multi-handicapped so qualifies under I.D.E.A. as well as Section 504 as part of the denial of faith claim you may have an allegation that the student was molested. Something along those lines. So you have a completely separate cause of action. Those are separable. You can separate the allegation of the child molestation nobody in their right mind would argue the child molestation is part of the educational program. You can separate that out. That may be able to proceed although there potentially still exhaustion, well there probably wouldn't be exhaustion requirements for that. The I.D.E.A. stuff, if we were here arguing that no, no, no they have to go to a hearing officer, the state agency appoints to deal with child molestation I think what Fry's telling us is those are two separate and distinct things. That's not what we have here. But one thing about this complaint is in count two, unlike count three, it doesn't incorporate by reference the prior counts. It just says as a consequence of deliberate indifference he was exposed to the dangerous circumstances of being put on the sideline at the football game. And if we were to conclude applying the two pieces of clues that Fry talks about that such a scenario could occur outside the school setting and to someone other than a student shouldn't this cause of action be able to survive? Whether it's released is a different subject and so we should keep that separate if you don't mind for this question. So under your hypothetical, if we just superimpose it on this, why can't count two be sort of segregated out and the other two be deemed fake claims? Just one correction, Your Honor. Paragraph 62 all previous paragraphs were incorporated here by reference. That's count two. So plaintiff has incorporated all the prior allegations with respect to failure to accommodate. Paragraph 67 clearly references that the Paragraph 62 talks about count one. I'm looking at, I'm on Act 142 as the appendix says for the record. Count two, paragraph 74 is the beginning of count two. So I concede that he incorporated all the previous paragraphs for the purpose of count two and I concede that he did it for count three in paragraph 75. But I don't see the same allegation in paragraph 74. So even under the pleadings, it seems that your hypothetical would lead us to be able to segregate that one out. I'm just, I'm looking at the second amendment complaint. There were multiple and I just, Judge Schwartz, if you may just want to check to make sure that your count two is not referencing one of the prior complaints. I'll be happy to look. That's fine. To answer your question though, I don't think this can be carved out. Even looking at it in the allegations that are contained within count two, the paragraphs of count two. Even if you were to look at it and say he has not incorporated, plaintiff has not incorporated the previous avertments with respect to failure to accommodate. I believe that it is still intertwined to the point that it would not survive, not only would it not survive Fry, but it also would not survive this court's decision in Batchelor. Can we get at the settlement here or does that create a jurisdictional problem?  was evidently prepared to consider your settlement based defense in the context of a summary judgment motion that the court assumed you would be filing. But then said after Batchelor, that September order, we you know, I don't have jurisdiction here and kicked it on a jurisdictional basis and that is the only order in front of us right now. Can we, in the context of considering whether the district court was right or not about its through the settlement agreement? I think most certainly it can. It is affirmative defense. But I think the court has the ability to take a look at it. I believe it was acknowledged in the pleadings. Well, it wasn't acknowledged in the pleadings. I believe it is paragraph 43 of the second amendment complaint. How could we look at the merits if we didn't have jurisdiction? To the jurisdictional issue? That's what I'm trying to ask. That's a predicate to anything we do on the merits. If Batchelor is good law or if Batchelor is as it is a precedent at this court, how do we reach the settlement and release? For the purposes of today I think you're here with the situation. We've made the issue of jurisdiction of this court. Since it wasn't a final order coming out of the lower court, it effectively remanded the plaintiff in that case at the time, the plaintiff, the appellants in this case down to an administrative law judge or administrative hearing officer in part because of the settlement agreement and the language of the settlement agreement. I understand your opponent to have made the argument we could not have exhausted our IDEA claims any further than we did because we had settled them. Words to that effect. There had been a settlement and that, so it would have been futile to go forward and do anything else. In making that argument does that necessarily pull the settlement into a discussion about jurisdiction? I believe it does. The settlement agreement and the language that was referenced, where Chief Justice Smith stopped, it went on to reference not only IDEA, but it also specifically referenced the Americans with Disabilities Act. Section 504 wasn't referenced, but it would have been caught in any other federal or state statutes and regulations. The remedies under Section 504 are almost identical to the remedies that are under IDEA. You really have, through that settlement agreement, you've covered IDEA, you've covered Americans with Disabilities Act, pretty clearly and extremely broadly. Chief Justice Smith started in a section and the beginning of that section started to the fullest extent permitted by law, plaintiff waives. It's as broadly drafted as I believe it could be drafted. In the context of Frye and in the context of Batchelor, it makes it clear that those IDEA claims, those Section 504 claims, the ADA claims require exhaustion. Thank you. Rose, we'll have you back on rebuttal. I think I understand the I'm sorry, I started before I'm up here. I think I understand what you're saying about the jurisdictional question. From the point of view of jurisdiction, this is my appeal. There was no appeal filed by the school district from this report's denial of the motion to dismiss. That is sort of the line that you're coming from then. I think that no, this court would not have jurisdiction over that. That's the question I've put to your colleague and which I put to you is if you rely upon the settlement to say it's futile, I couldn't have done anything, how can we not consider the settlement agreement in the context of wondering whether we've got jurisdiction? You made that argument, right? You brought it in. You pick up one end of that stick, you pick up the other, don't you? What I said was and what our position is we started the administrative process and we concluded that process by the settlement agreement. Are you or are you not considering settlement and the settlement agreement that memorializes it? The basis for futility here. No. The basis for futility. Futility is interesting because that word does not appear in Justice Cade's opinion. We're not talking about Justice Cade's opinion. I guess that futility might not be an issue in these cases. That might not be the way to phrase the question. The argument that I made pre-fly was that claims that I was bringing in the federal court, district court could not be adjudicated in the context of a due process hearing under FAPE. You wouldn't go through that process because it would be futile. I thought that the basis for your argument was we can't go through the hearing because we've already settled those claims. It makes no sense. The argument is too prompt. The settlement represents an exhaustion. You're right. I did say relative to this court's jurisdiction that there would be, I am out of court based upon the district court's dismissal of these claims. It's not that I can go through any administrative process. I think that we're conflating several different issues there. I'd like to just bring real quickly. This release is exactly the same language as was ruled upon by the court. I cited it in our reply brief. FH versus Hall versus Memphis School District. 754 F3D 638. That's a Sixth Circuit case. Same language. They said it's not a general release. It is a, you know, you can pursue your claims that that state didn't, there's no jurisdiction there for those claims so I could never have brought those claims there. That's the language of the release. Relative to the release, I know there's some issues and we didn't talk about exhaustion. I just wanted to bring it to the court. One other case. RM versus City of St. Charles. It's Westlaw 2016 2910265. Talks about how a settlement is an exhaustion of the administrative process. Thank you very much, Mr. Rolls. Thank you, Mr. Griffith. Safe travels, both of you, back to Western Pennsylvania to take the matter under advisement.